Espire CONCEPCION, Respondent,

v.

**LEAR CORPORATION, and Zurich North America Insurance Company, Appellants,**

and

**Treasurer of the State of Missouri, Respondent.**

No. WD 64871.

Missouri Court of Appeals, Western District.

Oct. 11, 2005.

Stephen McManus, St. Louis, for appellant.

Frank Eppright, Kansas City, for Espire Concepcion, respondent.

Benita Marie Seliga, Office of Atty. General, for Treasurer of State of Missouri, respondent.

PAUL M. SPINDEN, Judge.

Lear Corporation and its insurer, Zurich North America Insurance Company, appeal the Labor and Industrial Relations

Commission's award of workers' compensation to Espire Concepcion. They complain that the Second Injury Fund should be contributing to the workers' compensation awarded to Concepcion because, contrary to the commission's finding, his permanent disability did not result solely from an injury suffered while working for Lear.

The commission's decision awarding Concepcion workers' compensation is supported by competent and substantial evidence and is not contrary to the overwhelming weight of the evidence. We affirm the decision.

Concepcion was working for Lear as a machine operator, when, on March 3, 1999, he injured his left ring finger. A physician splinted the finger and prescribed pain medication. Concepcion refused the doctor's suggestion that a wire be inserted into the finger to keep it straight. As a result, Concepcion was unable to straighten the finger, and he suffered pain and weakness in his hand. Concepcion did not miss any work because of the injury. Concepcion performed his usual work duties by compensating with his right hand.

Concepcion's psychiatrist opined that this injury triggered a chronic pain syndrome. In a separate workers' compensation claim, the commission determined that Concepcion's finger injury was a permanent partial disability of 20 percent.

Two months later, on May 3, 1999, Concepcion suffered a herniated disc in his lower back while lifting a heavy bag at work. He underwent a laminectomy and diskectomy. After missing three months' work because of this injury, Concepcion returned to light duty at Lear. Lear terminated his employment three months later because he could not meet productivity expectations. He experienced severe back pain, which required him to lie down frequently, and could not perform most of his previous duties.

In addition to causing him pain, his back injury triggered severe depression. Although Concepcion had some pre-existing psychological conditions—including a dependent personality and chronic pain syndrome—which predisposed him to depression and heightened his complaints of pain, his back injury markedly increased these conditions. Sharp back pain prevented him from engaging in normal, daily activities such as driving his car, bathing, and playing with his grandchildren.

Concepcion filed for workers' compensation benefits. After a hearing, the commission's administrative law judge determined that Concepcion's May 3 back injury totally and permanently disabled him. The administrative law judge did not rule on the issue of benefits for future medical treatment. Lear appealed to the commission, which ruled that the administrative law judge's decision was supported by substantial and competent evidence, but it modified the award to add benefits for future medical treatment.

Lear and Zurich appeal the commission's decision. They do not dispute that Concepcion is totally and permanently disabled, but they challenge the commission's finding that Concepcion's permanent and total disability resulted solely from his May 3 back injury. They argue that, because pre-existing conditions contributed to Concepcion's disability, the Second Injury Fund should pay a portion of Concepcion's disability. Lear also argues that the commission erred in awarding benefits for future medical treatment.

In reviewing Lear's and Zurich's appeal, we must examine the whole record and determine whether or not the commission's award was supported by competent and substantial evidence. If it was, we must affirm the commission's decision unless the award was contrary to the over-

whelming weight of the evidence. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).

■■■ The Second Injury Fund compensates injured workers who are permanently and totally disabled by a combination of past disabilities and a primary work injury. The fund's purpose is to encourage employers to hire individuals who have disabilities by relieving the employer of liability for an employee's disabilities not attributable to an accident occurring while working for the employer. *Loven v. Greene County*, 63 S.W.3d 278, 282 (Mo. App.2001), *overruled on other grounds, Hampton*, 121 S.W.3d at 223. To impose liability on the Second Injury Fund, a claimant must have had a "pre-existing permanent partial disability [that] existed at the time the work-related injury was sustained and [that] was of such seriousness as to constitute a hindrance or obstacle to employment or re-employment." *Muller v. Treasurer of Missouri*, 87 S.W.3d 36, 40 (Mo.App.2002), *overruled on other grounds, Hampton*, 121 S.W.3d at 223. The pre-existing disability:

> [M]ust combine with a disability from a subsequent injury in one of two ways: (1)[T]he two disabilities combined result in a greater overall disability than that which would have resulted from the new injury alone . . .; or (2) the pre-existing disability combined with the disability from the subsequent injury to create permanent total disability.

*Karoutzos v. Treasurer of the State of Missouri*, 55 S.W.3d 493, 498 (Mo.App. 2001), *overruled on other grounds, Hampton*, 121 S.W.3d at 223.

■■■ "To determine whether a pre-existing partial disability constitutes a hindrance or obstacle to the employee's employment, the [c]ommission should focus on the potential that the pre-existing injury may combine with a future work related injury to result in a greater degree of disability than would have resulted if there was no such prior condition." *E.W. v. Kansas City, Missouri, School District*, 89 S.W.3d 527, 537 (Mo.App.2002), *overruled on other grounds, Hampton*, 121 S.W.3d at 223.

■■■ Lear and Zurich point to four injuries or conditions that, they argue, combined to cause Concepcion's permanent and total disability: (1) his left hand injury from March 1999; (2) pre-existing psychiatric conditions; (3) limited intellectual capacity; and (4) his May 1999 back injury. We disagree.

Concepcion presented credible evidence that his back injury alone permanently and totally disabled him. His treating physician testified, "In my opinion, looking only at [Concepcion's] failed back syndrome, he was permanently and totally disabled." Relying only on Concepcion's back injury, three vocational consultants testified that Concepcion was unemployable on the open labor market because back pain required him to recline during the day.

Because Concepcion's disability resulted solely from his back injury, the Second Injury Fund is not liable unless Lear and Zurich establish that Concepcion had a pre-existing permanent disability that was an obstacle or hindrance to employment when he injured his back and that this disability combined with his back injury to create a permanent total disability or a greater overall disability than would have resulted from the back injury alone. Lear and Zurich did not do this. Although Concepcion's finger injury was a permanent, partial disability, Concepcion's permanent and total disability resulted solely from his back injury. That his finger was injured made no difference. The back injury alone was severe enough to disable him permanently and totally. Thus, Concepcion's fin-

ger injury did not combine with his back injury to create a greater overall disability or to cause his permanent, total disability.

Lear and Zurich argue that Concepcion had psychological conditions, triggered by his finger injury, that caused him to experience above average pain and depression following his back injury. Thus, they argue, Concepcion's pre-existing finger injury combined with his back injury to create a greater disability than that caused by his back injury.

■ Even if this were true, Lear and Zurich did not show that Concepcion's psychological conditions were so severe as to constitute a hindrance or obstacle to employment *when he injured his back. Muller*, 87 S.W.3d at 40. After Concepcion injured his finger, he had a temporary adjustment disorder, minor depression, and the onset of chronic pain syndrome, but it did not rise to the level of a condition that was a disability. Concepcion testified that he became depressed only after injuring his back, and a psychiatrist who examined Concepcion four years after his back injury was unsure when Concepcion's depression began. Concepcion was not treated for depression until 2001, two years after his back injury. The psychiatrist opined that Concepcion's back injury sharply increased any psychological problems caused by the earlier finger injury. The Second Injury Fund is not liable when a work-related injury causes a change in a pre-existing condition, which is escalated in the work-related injury to a disability. *Roller v. Treasurer of the State of Missouri*, 935 S.W.2d 739, 745 (Mo.App.1996), *overruled on other grounds, Hampton*, 121 S.W.3d at 223.

Nor did Lear and Zurich establish that Concepcion's intellectual capacity was a pre-existing disability or an obstacle or hindrance to employment. He was a high school graduate. He did not have a learn-ing disability. He could read, write, and understand English, and he could solve problems and perform arithmetic at the post-high school level. Concepcion's language problems were not a proper consideration in determining disability. *Karoutzos*, 55 S.W.3d at 499 ("[c]ommission's consideration of ... deficient English skills as a component of finding permanent total disability was improper").

Concepcion's back injury caused him to become permanently and totally disabled. We affirm the commission's award in that regard.

■ Lear and Zurich next argue that the commission erred in finding them liable for future medical benefits. They assert that the commission did not have sufficient evidence to award future medical care as a result of his back injury.

■ A claimant is entitled to benefits for future medical treatment if he or she shows by a reasonable probability that future medical treatment is needed "to cure and relieve ... the effects of the injury." Section 287.140.1, RSMo 2000; *Dean v. Saint Luke's Hospital*, 936 S.W.2d 601, 603 (Mo.App.1997), *overruled on other grounds, Hampton*, 121 S.W.3d at 223. A doctor's testimony, couched "in terms of likelihood rather than certainty," can support an award, "particularly when coupled with other credible evidence of a nonmedical character." *Dean*, 936 S.W.2d at 605 (award of future medical benefits supported by doctor's testimony that claimant would "very likely" need future medical treatment and by claimant's testimony that she still suffered pain although she took medication continuously and performed home physical therapy).

In the record before the commission was a psychiatrist's statement in 2000 that Concepcion would need treatment for pain and depression "for at least one year."

Concepcion's family doctor prescribed Prozac in 2001 to treat Concepcion's depression, and as of April 2003, Concepcion was still taking several medications for pain, depression, and insomnia. This evidence was sufficient for Concepcion to meet his burden of establishing a likelihood of future medical treatment.

Hence, we affirm the commission's decision to award benefits for permanent and total disability and for future medical treatment.

LISA WHITE HARDWICK, Presiding Judge, and PATRICIA BRECKENRIDGE, Judge, concur.