**Teresa R. CARKEEK, Appellant,**

v.

**TREASURER OF the STATE of Missouri–CUSTODIAN OF the SECOND INJURY FUND, Respondent.**

**No. WD 73377.**

Missouri Court of Appeals,
Western District.

Oct. 11, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 22, 2011.

Mark E. Kelly, Kristi L. Pittman, Liberty, MO, for Appellant.

Andrew J. Dickson, Kansas City, MO, for Respondent.

Before JAMES EDWARD WELSH, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

## LABOR AND INDUSTRIAL RELATIONS COMMISSION

JAMES EDWARD WELSH, Presiding Judge.

Teresa R. Carkeek appeals the Labor and Industrial Relations Commission's decision denying her claim against the Second Injury Fund for permanent total disability benefits. The Commission found that Carkeek did not prove that either of the injuries she sustained in two different work accidents combined with her preexisting disabilities to render her permanently and totally disabled. Carkeek contends that the Commission's decision was not supported by substantial and competent evidence and that the Commission erroneously applied the law. We disagree and affirm.

In June of 1995, Carkeek began working for Hallmark as a retail order processor. Carkeek's employment consisted of folding cartons, placing labels on them, and taping the cartons in order to fill them with orders. Carkeek then walked around and filled the carton with orders before sealing the box and placing it on the conveyor belt to send it off for shipping.

On June 5, 2006, Carkeek claims that she injured her left shoulder while lifting boxes at work. Carkeek also claims that she injured her neck and upper back by falling into a cart at work on December 13, 2006. Carkeek did not seek any treatment for either of the two alleged work injuries until January 3, 2007.

Carkeek filed claims for compensation against the Second Injury Fund for both the June 5, 2006, and December 13, 2006, work injury. Carkeek alleged that her preexisting disabilities combined with the alleged June 5, 2006, injury rendered her permanently and totally disabled and that her preexisting disabilities combined with the alleged December 13, 2006, injury rendered her permanently and totally disabled.

An administrative law judge (ALJ) held a hearing on this matter on February 1, 2010. Carkeek introduced into evidence numerous medical records outlining her alleged work injuries and her preexisting disabilities. Carkeek presented the deposition testimony of Dr. P. Brent Koprivica, who testified about Carkeek's work injuries and her preexisting disabilities. Koprivica, however, did not make a determi-

nation about whether or not Carkeek was permanently and totally disabled. Koprivica said that he would defer to the vocational expert to make that determination. Terry Cordray, a vocational rehabilitation counselor, testified at the hearing. He concluded that Carkeek was permanently and totally disabled and was not employable in the open labor market. On cross-examination, however, Cordray admitted that Carkeek could be "cash register trained."

The ALJ found that Carkeek did prove that she sustained a job-related accident on December 13, 2006, but that she did not prove that she was rendered permanently and totally disabled as a result of the December 2006 accident even when considered in combination with her preexisting disabilities. As to the June 2006 work accident, the ALJ determined that "the Second Injury Fund is only liable for permanent total disability benefits if the disability from the last injury or accident combines with the preexisting disability to render the employee permanently and totally disabled." The ALJ reasoned that Carkeek's last accident and injury was not the June 2006 injury, and, therefore, the Second Injury Fund was not liable for permanent total disability benefits. The ALJ further found that Carkeek did not prove that she was rendered permanently and totally disabled as a result of the June 5, 2006, work accident and her preexisting disabilities.

Carkeek filed an application for review with the Commission. The Commission entered separate Findings of Fact and Rulings of Law for each of the two claims. It found that the combination of Carkeek's preexisting disabilities and the December 13, 2006, work injury did not render Carkeek permanently and totally disabled.[1] The Commission did, however, disagree with the ALJ's conclusion that, because the June 5, 2006, injury was not Carkeek's last accident and injury, the Second Injury Fund was not liable for permanent total disability benefits. The Commission said that the ALJ's statements were merely dicta but specifically stated that it did not adopt the ALJ's statements in this regard because it believed that the ALJ had misstated the law. The Commission did, however, affirm and adopt the ALJ's decision that Second Injury Fund was not liable to pay Carkeek permanent total disability benefits due to the June 5, 2006, work accident and her preexisting disabilities.[2] Carkeek appeals.

■ Our review of this matter is governed by section 287.495.1, RSMo 2000, which provides, in relevant part:

Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award; or

---

1. The Commission did find that the Second Injury Fund was liable for permanent partial disability benefits in the amount of $7,531 for the December 2006 work injury. Carkeek does not appeal from this determination.

2. The Commission did find that the Second Injury Fund was liable for permanent partial disability benefits in the amount of $9,875.41 for the June 2006 work injury. Carkeek does not appeal from this determination.

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

This court reviews the Commission's award to determine whether it is "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, sec. 18. An award is supported by competent and substantial evidence unless it is against the overwhelming weight of the evidence. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003).

"The Second Injury Fund compensates injured workers who are permanently and totally disabled by a combination of past disabilities and a primary work injury." *Concepcion v. Lear Corp.*, 173 S.W.3d 368, 371 (Mo.App.2005). Section 287.020.6, RSMo Cum Supp.2010, defines the term "total disability" as the "inability to return to any employment and not merely [an] inability to return to the employment in which the employee was engaged at the time of the accident." The test for permanent total disability is whether the worker is able to compete in the open labor market. *ABB Power T & D Co. v. Kempker*, 236 S.W.3d 43, 48 (Mo. App.2007). "Total disability means the inability to return to any reasonable or normal employment, it does not require that the employee be completely inactive or inert." *Brown v. Treas. of Mo.*, 795 S.W.2d 479, 483 (Mo.App.1990). " 'Any employment' means any reasonable or normal employment or occupation." *Mell v. Biebel Bros., Inc.*, 247 S.W.3d 26, 29 (Mo. App.2008). "The critical question is whether, in the ordinary course of business, any employer reasonably would be expected to hire the injured worker, given his present physical condition." *ABB Power*, 236 S.W.3d at 48; *see also Molder v. Mo. State Treasurer*, 342 S.W.3d 406, 411–13 (Mo.App.2011). Carkeek has the burden to establish permanent total disability by introducing evidence to prove her claim. *Clark v. Harts Auto Repair*, 274 S.W.3d 612, 616 (Mo.App.2009).

Competent and substantial evidence supports the Commission's determination that the combination of Carkeek's preexisting disabilities and her work injuries (whether it is the June 2006 work accident or the December 2006 work accident or both) did not render her permanently and totally disabled. The Commission determined that Carkeek offered no definitive medical or vocational opinions which supported Carkeek's allegation that the Second Injury Fund was liable for permanent total disability benefits.

Dr. P. Brent Koprivica performed an independent medical evaluation on Carkeek. He found several disabilities that he felt were significant: neck strain from the December 2006 work accident, left shoulder injury from the June 2006 work accident, preexisting lower back impairment, and preexisting deep venous thrombosis issues. Koprivica found that none of these impairments in isolation were sufficient to render Carkeek permanently and totally disabled. When asked whether or not the combination of those four conditions rendered Carkeek permanently and totally disabled, Koprivica said that he had an opinion and that, when he saw Carkeek, his "concern as an occupational doctor was that that was the case." He said that in some cases, where it is "such an overwhelming situation," he will determine whether or not an individual is permanently and totally disabled but that this was not such a case. Koprivica stated that, in Carkeek's case, he would defer to the vocational expert to determine whether Carkeek was permanently and totally disabled.

Based upon Carkeek's preexisting disabilities and primary work injuries, Koprivica did, however, place several physical

restrictions on Carkeek. These restrictions included: no prolonged standing or walking; limited to ten pounds or less in terms of rare lifting or carrying using the left arm; no repetitive motion of the head or neck; no operating or driving commercially; no overhead activities of any kind; restricted to a sedentary physical demand level of activity; no repetitive pushing, pulling, or reaching activities with the left arm; no activities above chest level on the left side; no frequent bending at the waist, pushing, pulling, or twisting; no captive sitting for more than an hour; and no squatting, crawling, kneeling, or climbing.

According to Terry Cordray, a vocational rehabilitation counselor who evaluated Carkeek, the restrictions placed upon Carkeek by her doctors would preclude Carkeek from returning to her former occupation. Cordray noted that Carkeek was 57 years old and had only a high school education with no computer, keyboarding, or vocational training. He said that "[t]here is no reason to believe that an employer would hire [Carkeek] as a 57–year–old unskilled high school graduate who has such multiples of medical problems and physical limitations." Cordray opined that Carkeek was not employable in the open labor market because there were "no jobs she could perform" and because no employer would hire her. Cordray concluded that Carkeek was permanently and totally disabled due to the June 2006 shoulder injury at work combined with her preexisting disabilities. He stated that the December 2006 neck injury at work was just "icing on the cake."

On cross-examination, however, Cordray acknowledged that Carkeek had worked as a cashier in the past and that he thought "she could be cash register trained." In his report, which was submitted as an exhibit at the hearing, Cordray opined that, based upon the restrictions given from doctors, "Carkeek would be able to work at a sedentary occupation such as a cashier." In another portion of his report, Cordray again stated that the restrictions placed upon Carkeek's doctors "would permit her to perform such unskilled jobs as cashier."

The Commission found that Carkeek failed to prove that she could not work and failed to prove that the Second Injury Fund was liable for permanent total disability benefits. Cordray's testimony that Carkeek was employable as a cashier constituted sufficient competent and substantial evidence to support the Commission's determination. Moreover, at least in regard to the June 5, 2006, injury and claim, the Commission found that Cordray's opinion that Carkeek was permanently and totally disabled was not credible. "The Commission is free to believe or disbelieve any evidence, and we defer to the Commission's credibility determinations and to the weight it accords testimony and evidence." *Treasurer of the State of Mo.–Custodian of the Second Injury Fund v. Cook,* 323 S.W.3d 105, 110 (Mo.App.2010).

■ Carkeek argues that the Commission's decision is in direct conflict with *Angus v. Second Injury Fund,* 328 S.W.3d 294 (Mo.App.2010), because the unrefuted testimony of Koprivica and Corday established that she was permanently and totally disabled. In particular, the *Angus* court said that " '[t]he commission may not substitute an administrative law judge's personal opinion on the question of medical causation of [an injury] for the uncontradicted testimony of a qualified medical expert' in cases where '[m]edical causation ... cannot be considered uncomplicated.' " *Id.* at 301 (quoting *Wright v. Sports Associated, Inc.,* 887 S.W.2d 596, 600 (Mo. banc 1994)). The *Angus* case, however, is not applicable to this case for several reasons.

First, the Commission did not substitute an ALJ's personal opinion on the question of *medical* causation for the uncontradicted testimony of a medical expert. Koprivica did not offer his opinion as to whether or not Carkeek was permanently and totally disabled; he deferred to Cordray.[3] Second, although Cordray said that he believed that Carkeek was permanently and totally disabled and was not employable on the open labor market, on cross-examination and in his reports, Cordray acknowledged that Carkeek could be cash register trained and be employed as a cashier. Cordray's testimony was internally inconsistent, and the Commission was free to believe or disbelieve any part of it. *Cook,* 323 S.W.3d at 110. The Commission found that Cordray's opinions and conclusions that Carkeek was permanently and totally disabled were not credible. Finally, the *Angus* court said that the Commission may not substitute an ALJ's personal opinion on the question of *medical* causation for the uncontradicted testimony of a medical expert. *Id.* at 301. Carkeek suggests that, because Cordray was the only vocational expert to testify regarding her employability, the Commission erred in disregarding Cordray's uncontradicted *vocational* opinion. *Angus,* however, does not stand for the proposition that the Commission may not substitute an administrative law judge's personal opinion on the question of an individual's employability for the uncontradicted testimony of a vocational rehabilitation counselor. Moreover, as we have already noted, Cordray's testi-

mony was not undisputed because his own testimony contradicted his conclusion that Carkeek was not employable on the open market. Thus, we may defer to the Commission's finding on a technical matter, such as the employability of an individual, which is within the Commission's expertise. *See Wright v. Sports Associated, Inc.,* 887 S.W.2d 596, 600 (Mo. banc 1994), *overruled in part by Hampton,* 121 S.W.3d at 220.

We, therefore, affirm the Commission's award denying Carkeek's claim against the Second Injury Fund for permanent total disability benefits.

All concur.

---

**3.** Even if Koprivica had his opinion as to the extent of disability, such opinion is not so medically technical as to remove it from the expertise that is attributed to the Commission. The question whether a claimant is totally and permanently disabled is not exclusively a medical question. *Crum v. Sachs Elec.,* 769 S.W.2d 131, 136 (Mo.App.1989), *overruled in part by Hampton,* 121 S.W.3d at 220. The Commission, in arriving at its ulti-

mate conclusion as to the degree of a claimant's disability, need not rely exclusively on the testimony of medical experts; rather, it may consider all the evidence and the reasonable inferences drawn from that evidence. *Pavia v. Smitty's Supermarket,* 118 S.W.3d 228, 239 (Mo.App.2003). The *Angus* case deals only with a medical expert's testimony concerning medical causation of an injury. *Angus,* 328 S.W.3d at 300.